WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith Margarita Bello,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-01620-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Judith Margarita Bello's application for disability insurance benefits by the Social Security Administration ("SSA"). Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's opening brief (Doc. 13), the Commissioner's opposition (Doc. 15), and Plaintiff's reply (Doc. 16). The Court has reviewed the briefs and the Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 15–27) as upheld by the Appeals Council (R. at 1–3).

**I. BACKGROUND**

Plaintiff filed an application for benefits on April 14, 2014 for a period of disability beginning on December 16, 2013. (R. at 15.) Plaintiff's claim was denied initially on August 6, 2014 (R. at 15) and on reconsideration on December 31, 2014 (R. at 15). Plaintiff then testified at a hearing held before an ALJ on August 12, 2016. (R. at 15.) On February 6, 2017, the ALJ denied Plaintiff's application. (R. at 27.) On March 30, 2018, the Appeals

Council denied a request for review of the ALJ's decision. (R. at 1–3.) On May 29, 2018, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has the following severe impairments: "obesity; headaches; degenerative disc disease and peripheral neuropathy." (R. at 17–18.)

Ultimately, the ALJ determined that Plaintiff "[did] not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404." (R. at 20.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a)"—with certain exceptions—in a role such as nail technician, accounting clerk, or assistant manager. (R. at 21, 26.)

## II. LEGAL STANDARD

The Court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). The Court should uphold the ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* Put another way, "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court should uphold the ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation," but the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citations and internal quotation marks omitted).

"[H]armless error principles apply in the Social Security Act context." *Molina v.*

*Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (citations and internal quotation marks omitted). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* Importantly, however, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ. *Id.* at 1121.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, which addresses whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

**III. ANALYSIS**

Plaintiff raises three arguments: (1) the ALJ erred by rejecting Plaintiff's symptom testimony; (2) the ALJ erred by rejecting the opinion of Plaintiff's treating neurologist, Dr. Stephen Flitman; and (3) the ALJ erred by finding that Plaintiff's alleged fibromyalgia was

not a medically determinable or severe impairment that had no more than a minimal effect on her ability to work. (Doc. 13 at 1–2.)

### A. The ALJ Erred In Rejecting Plaintiff's Symptom Testimony

#### 1. *Plaintiff's Testimony*

Plaintiff testified she cannot work because of severe pain caused by fibromyalgia, pain in her back, hip, and neck, and headaches. (R. 36.) She stated that her back pain is "constant," her neck pain is "always there now," and her overall pain level is usually a seven on the one-to-ten pain scale. (R. 37-38.) As for her activity level, Plaintiff testified that she can stand for "[l]ess than ten minutes" at a time, can walk for "[l]ess than 30 minutes" at a time, and can sit for "[p]robably five minutes" before she needs to move around. (R. 39-41.) She later added that she needs to "lay down four or five times a day" for 20-30 minutes each. (R. 49-50.) Plaintiff also testified that she can lift 10-15 pounds but can't lift her 18-pound grandchild, needs help getting dressed due to pain in her hands and fingertips, and now has "difficulty doing things with fine manipulation" such that she has trouble even writing her name. (R. 41-45.) As for headaches, Plaintiff testified that she has them "all the time" and experiences migraine-level headaches a couple of times per month. (R. 45-47.) As for treatments for neck pain, Plaintiff testified that she's "had numerous shots and things," as well as nerve-burning "ablations," and "I'm just not interest in that anymore" because those treatments weren't helpful. (R. 47-49.) Finally, in response to questions by the ALJ, Plaintiff testified that she drives three times a week, is able to take care of two dogs, spends most days doing "regular household things, perhaps put in a load of laundry," is able to cook and do the dishes, and can shower without assistance. (R. 51-53.)

#### 2. *The ALJ's Rationale*

The ALJ discounted Plaintiff's symptom testimony, concluding that although "the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record . . . ." (R. 22.) The ALJ then provided the following reasons for this conclusion: (1) the medical records concerning Plaintiff's back revealed only "mild" impairments; (2) although Plaintiff complained of various types of pain after she began seeing Dr. Flitman, "these findings were not documented in Dr. Flitman's subsequent treatment notes"; (3) Plaintiff's "internal medicine provider, Dr. Shalini, consistently documented normal physical examinations, with rare lumbar tenderness"; (4) when meeting with Dr. Palmer, Plaintiff "stated she was able to sit, stand and walk for one hour continuously," and Dr. Palmer also observed that Plaintiff "appeared comfortable when seated, with no discomfort when changing position" and that Plaintiff's handwriting was normal; (5) Plaintiff had not pursued any medical treatment for her back since December 2015; (6) a brain MRI was "unremarkable"; (7) Plaintiff told Dr. Flitman in November 2014 (after undergoing a lumbar puncture in June 2014) that she no longer has intense headaches; and (8) Plaintiff has not pursued any medical treatment for her headaches since December 2015. (R. 22-23.) For these reasons, the ALJ concluded that "[t]he claimant's allegations regarding the severity of her symptoms and limitations are greater than expected in light of the objective evidence of record." (R. 23-24.)

3.  *Legal Standard*

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112 (citation omitted). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations and internal quotation marks omitted). Here, the ALJ determined Plaintiff satisfied this first step. (R. 22 ["[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms . . . ."].)

If the first step is satisfied, and "there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (citations and internal

quotation marks omitted). Here, the ALJ didn't find evidence of malingering, so he was required to provide specific, clear and convincing reasons to reject Plaintiff's symptom testimony.

To satisfy the "specific, clear and convincing" standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted). *See also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). "General findings are insufficient," *Burrell*, 775 F.3d at 1138, and "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible," *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

4. *Analysis*

In her brief, Plaintiff identifies four reasons why the ALJ's rationale for rejecting her symptom testimony should be deemed erroneous: (1) Ninth Circuit law holds that a claimant's symptom testimony need not be "entirely consistent" with the objective medical evidence in order to be credited, yet the ALJ discounted her testimony in part due to a lack of entire consistency; (2) the ALJ "omitted significant evidence that corroborated [her] testimony," including the evidence corroborating her claims of fibromyalgia; (3) the ALJ "failed to tie-in the characterization of the medical record with any particular symptom testimony"; and (4) the treatment records merely showed temporary improvement in Plaintiff's headache-related symptoms following various medical procedures, so those records shouldn't have been viewed as impeaching. (Doc. 13 at 12-15.) The Commissioner disagrees, arguing that the ALJ's rejection of Plaintiff's symptom testimony should be upheld because (1) the objective medical evidence—specifically, the back-related records showing only "mild" impairments—was inconsistent with Plaintiff's subjective complaints, and (2) Plaintiff experienced partial improvement in her headaches

and migraines with treatment. (Doc. 15 at 3-8.)

The Court agrees with Plaintiff that the ALJ committed reversible legal error when rejecting her symptom testimony. In the Court's view, the most notable error flowed from the ALJ's failure to discuss all of the relevant evidence bearing upon Plaintiff's claim of fibromyalgia. As discussed in Part III.C *infra*, both Dr. Flitman (Plaintiff's treating physician) and Dr. Richard Palmer (a state agency examining physician) diagnosed Plaintiff with fibromyalgia after documenting 18/18 positive tender points. (R. at 287–88, 442–43, 507 [Dr. Flitman], 574-75 [Dr. Palmer].) The ALJ did not acknowledge all of this evidence, much less explain why it shouldn't be credited, when reaching the conclusion that "there is insufficient evidence that her fibromyalgia is a medically determinable impairment." (R. 24.)

This error was not harmless because, had the ALJ credited Plaintiff's fibromyalgia-related testimony, it is possible the ALJ would have assigned more credit to her overall symptom-related testimony and concluded she was disabled.

### B. The ALJ Did Not Err In Rejecting The Opinion Of Plaintiff's Treating Neurologist, Mr. Flitman

Although "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if a treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d

- 7 -

747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the ALJ provided five reasons for declining "to give significant weight to" the opinions of Plaintiff's treating neurologist, Dr. Flitman: (1) Dr. Flitman "submitted three inconsistent opinion forms that cannot be reconciled with each other" and "contain such varied limitations that they cannot be internally reconciled"; (2) "Dr. Flitman's physical examinations . . . did not document symptoms that support the degree of limitation stated in any of his opinions"; (3) Dr. Flitman "indicated in one form that the claimant's symptoms had persisted since December 2011, two years before she stopped working"; (4) "Dr. Flitman's opinions appear to reflect sympathy for the claimant, and/or her subjective complaints, rather than objective clinical or diagnostic evidence"; and (5) Dr. Flitman's conclusion that Plaintiff "should be on 'disability'" is a legal conclusion reserved for the Commissioner. (R. 24-25.)

The ALJ's first reason for rejecting Dr. Flitman's opinions—internal inconsistency—was specific and legitimate and was based on substantial evidence in the record. Following one visit with Plaintiff in November 2014, Dr. Flitman opined that Plaintiff could stand for up to one hour at a time but could only stand, in the aggregate, for less than one hour per day. (R. 549.) As the ALJ correctly noted, these opinions are irreconcilable. Additionally, although Dr. Flitman also opined following the November 2014 visit that Plaintiff could sit for only 10 minutes at a time (R. 549), he issued a contrary opinion only three months later that Plaintiff could sit for one hour at a time. (R. 485.) These opinions are also irreconcilable. Indeed, Plaintiff doesn't dispute that Dr. Flitman provided inconsistent opinions concerning her exertional limitations. (Doc. 13 at 17-18 ["So far as it goes, the ALJ decision [on inconsistency] is correct."].)

The Ninth Circuit has recognized that internal inconsistency is a valid basis for rejecting a treating physician's opinions. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (affirming ALJ's rejection of treating physician's opinions, where the ALJ "identified a contradiction in [the doctor's] opinion," and holding that this

contradiction provided a "specific and legitimate reason[] supported by substantial evidence" for the rejection). *Cf. Molina*, 674 F.3d at 1112 (affirming ALJ's rejection of medical testimony in part because the source's opinion that the claimant suffered from frequent panic attacks throughout the day "conflicted with [the source's] earlier assessment that Molina's anxiety attacks were only intermittent").[1]

### D. The ALJ Erred When Assessing Plaintiff's Fibromyalgia

At step two, a claimant must prove that he or she has a severe impairment or combination of impairments that significantly limit his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). An ALJ may find an impairment or combination of impairments is not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (alteration in original) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). Here, the ALJ concluded there "[was] insufficient evidence to support a finding that the [Plaintiff] ha[d] a medically determinable impairment of fibromyalgia." (R. at 20.) The ALJ provided three reasons for this conclusion: (1) inconsistencies in the reported onset date of Plaintiff's fibromyalgia; (2) the absence in the medical record, aside from positive tender points, of any "discussion of any other indicators of fibromyalgia, including diagnostic imagining or laboratory results"; and (3) inconsistency between Dr. Flitman's documentation of "18 out of 18 tender points during . . . four appointments between September 2013 and . . .

---

[1] Plaintiff argues the ALJ's rejection of Dr. Flitman's testimony was improper because, under *Dale v. Colvin*, 823 F.3d 941 (9th Cir. 2016), "[i]nconsistency in Dr. Flitman's ratings of exertional capacity does not invalidate his entire assessment of [Plaintiff's] work capacities." (Doc. 13 at 18.) This argument is unavailing. In *Dale*, the Ninth Circuit held that the ALJ improperly rejected a medical source's opinions concerning the claimant's "manipulative and mental" limitations because the inconsistency arose from the source's opinions concerning a different issue—the claimant's "exertional and postural" limitations. 823 F.3d at 945-46. The Ninth Circuit further noted the "error was not harmless because the vocational expert opined that a person with the mental limitations identified by [the source] could not work." *Id.* at 946. But here, Dr. Flitman didn't offer inconsistent opinions on some irrelevant issue that isn't being disputed in this proceeding—one of the key issues here is whether the ALJ properly factored Plaintiff's exertional limitations into the RFC, and the inconsistency in Dr. Flitman's opinions related to Plaintiff's exertional limitations.

December 2015" and the records of Plaintiff's "internal medicine provider," who "documented no tender points between 2013 and 2015." (*Id.*)

The ALJ's first reason for rejecting Plaintiff's claim of fibromyalgia—inconsistent onset dates—was invalid. The medical record cited by the ALJ simply states that "[Plaintiff] reports a history of fibromyalgia signs and symptoms for 20 years and the condition was diagnosed approximately 3 years ago." (R. at 571.) There is nothing inherently suspect about suffering from a condition for a period of years before obtaining a formal diagnosis of that condition.

The ALJ's second reason for rejecting Plaintiff's claim of fibromyalgia—its existence wasn't confirmed through imaging or laboratory results—was also invalid. Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (citation omitted). "For a long time, fibromyalgia was 'poorly understood within much of the medical community.'" *Id.* (citation omitted). "Indeed, '[t]here used to be considerable skepticism that fibromyalgia was a real disease.'" *Id.* (alteration in original) (citation omitted). "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'" *Id.* (citation omitted). Thus, there are "'no laboratory tests to confirm the diagnosis,'" nor does a "diagnosis . . . rely on X-rays or MRIs." *Id.* at 656, 657 (citation omitted).

The ALJ's third and final reason for rejecting Plaintiff's claim of fibromyalgia—inconsistency between Dr. Flitman's exams and the exams conducted by a different doctor during the same time period—was invalid, too. Notably, the ALJ's opinion fails to acknowledge that both Dr. Flitman *and* Dr. Richard Palmer, a state agency examining physician, diagnosed Plaintiff with fibromyalgia after documenting 18/18 positive tender points. (R. at 287–88, 442–43, 507 [Dr. Flitman], 574-75 [Dr. Palmer].) As Plaintiff correctly notes in her brief, "[t]he ALJ did not explain how the agency's own examiner provided an incorrect diagnosis, much less how the record evidence contradicted that diagnosis." (Doc. 13 at 23.)

This error was not harmless. As discussed in Part III.A above, the ALJ discredited Plaintiff's symptom testimony in part because he concluded Plaintiff did not suffer from fibromyalgia as she alleged. (R. at 24.) Had the ALJ concluded Plaintiff does suffer from fibromyalgia, it is possible he would have found Plaintiff was disabled.

### D. Credit-as-True Rule Does Not Apply

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in the remand of Plaintiff's case for payment of benefits. (Doc. 13 at 24-25.) This rule only applies in "rare circumstances" that permit the Court to depart from the ordinary remand rule, under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must fail to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

The Court has reviewed the record and agrees with Defendant that the record is not fully developed and that uncertainty remains as to whether Plaintiff is disabled under the Act. Although the ALJ failed to provide adequate reasons for rejecting Plaintiff's symptom testimony and for concluding Plaintiff did not suffer from the medically determinable impairment of fibromyalgia, the Court retains some uncertainty as to whether Plaintiff is, in fact, disabled.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with this Order.

..

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 24th day of September, 2019.

Dominic W. Lanza
United States District Judge